GREENWOOD PACKING PLANT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101593. Promulgated March 13, 1942.

*Theodore B. Benson, Esq.*, for the petitioner.
*Charles Oliphant, Esq.*, for the respondent.

OPINION.

BLACK: This is not a case where petitioner has received from the Government a refund of processing taxes which it had accrued and paid in a prior year and which the Commissioner has determined had been passed on to the taxpayer's customers in such prior year and had not since been refunded to such customers. This is a case where the taxpayer accrued on its books in 1935 a liability for certain processing taxes which it did not pay in that year but which it took as a deduction on its income tax return filed for 1935. This return showed a loss of $497.37 and no income tax due.

Later on, after the processing tax had been declared unconstitutional, petitioner's books and accounts were audited by a revenue agent and he disallowed as a deduction $2,051.19 processing taxes which petitioner had accrued as a liability on its books in 1935 and had taken as a deduction on its 1935 tax return, although such amount was never paid by petitioner. The revenue agent, however, allowed to petitioner certain additional deductions which petitioner had not taken on its income tax return. These additional deductions when taken into account still showed that petitioner had a loss in 1935 of $47.63.

So far as the record shows, the Commissioner approved this report of the revenue agent and did not determine any deficiency in petitioner's normal income tax for the year 1935. The report of the internal revenue agent made no recommendation or findings as to petitioner's unjust enrichment tax, if any, under Title III of the Revenue Act of 1936. The Commissioner on December 6, 1939, determined a deficiency of $1,598.02 in petitioner's unjust enrichment tax for the calendar year ended December 31, 1935. The detailed reasons which were given by the Commissioner for his determination of the deficiency have already been stated, in our preliminary statement, and need not be repeated here.

It is plain that if petitioner is taxable on the $1,997.52 accrued processing taxes, not paid, it is under section 501 (a) (1) of the

Revenue Act of 1936. That provision of the 1936 act is printed in the margin.[1]

Petitioner defends against the imposition of the tax on two grounds: (1) That it operated at a loss and received no net income from any source in 1935, and, failing in this, (2) That no net income was received from the processing of hogs in 1935.

With respect to ground No. 1, it has been proved in this proceeding that the income tax return of petitioner which was filed for the year 1935 showed a loss of $497.37 and that respondent's revenue agent made certain adjustments in petitioner's income as shown on its return which were not contested, and that after these adjustments were made petitioner still had a loss of $47.63 instead of net income for the year 1935. For the purpose of this discussion we assume that this revenue agent's report made a correct determination of petitioner's income and deductions for the year 1935 and correctly arrived at a loss of $47.63 for the year. However, as we construe section 501 (a) (1), in order for a taxpayer to escape its provisions it is not sufficient to show that the taxpayer had a loss in the taxable year from general business operations. A taxpayer may be liable for unjust enrichment taxes even though he had no net income from general operations. It seems clear that the statute so provides.

As we construe the statute in question, there are two ways whereby a taxpayer can show he was not liable for the tax which has been imposed. First, if he can prove that he did not pass the tax on to his customers but absorbed it himself, then he is not liable for the tax, even though he did have a net income in the taxable year. Second, if he can prove that he had a loss from the sale of articles upon which the excise tax was not paid, then he would not be liable for the tax, even though he is not able to prove affirmatively that he absorbed the tax. No authorities need be cited to show that the burden is on petitioner to show these things. It seems plain that petitioner does not succeed in providing either of these things by showing that it had a small operating loss in 1935 from its business operations.

Petitioner, at the hearing, made no effort to show that it did not pass the processing tax on hogs to its customers except to show that during the year it operated its business at a small loss. This sort of evidence is not sufficient to prove that it did not pass the processing

---

[1] SEC. 501. TAX ON NET INCOME FROM CERTAIN SOURCES.

(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

(1) A tax equal to 80 per centum of that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such person but not paid which is attributable to shifting to others to any extent the burden of such Federal excise tax and which does not exceed such person's net income for the entire taxable year from the sale of articles with respect to which such Federal excise tax was imposed.

tax on to its customers. Cf. *Vennell* v. *United States*, 122 Fed. (2d) 936, affirming 38 Fed. Supp. 381. Likewise, such evidence as to a small loss in 1935 from general business operations is not sufficient to show that petitioner incurred a loss in the sale of its hog products upon which the processing tax was imposed. If petitioner did in fact suffer a loss in the sale of its hog products during the calendar year 1935, the burden was on it to prove such loss in one of the two ways which the statute requires. The method of proof is prescribed by section 501 (c), printed in the margin.[2] Petitioner concedes that it has made no effort to determine its net income, if any, from its sales specified in section 501 (a) (1), in the manner prescribed by section 501 (c) (1) or (2). The reason that it has made no effort to do so is because it has no accounting records which will enable it to determine the amount of its gross income from the sale of hogs which were processed. Without first determining the amount of gross income from these sales, it is, of course, impossible to determine the net income or loss from them, as the case may be. Petitioner can and has determined that its gross sales of all products in 1935 were $105,821.95 but it has been unable to show any breaking down of these sales so as to show separately how much hog products, how much beef products, and how much miscellaneous merchandise were sold. Petitioner has records from which it can break down its purchases during 1935 and these have been shown in our findings of fact. The amount of hogs purchased plus materials which went into their processing was $16,811.78. However, this particular evidence as to hog purchases offers no help by which we can determine the gross income which petitioner received from the sale of hog products after the hogs were processed. Without such latter data, we are unable to determine, as we have already stated, whether petitioner had a net

---

[2](c) The net income from the sales specified in subsection (a) (1) shall be computed as follows:

(1) From the gross income from such sales there shall be deducted the allocable portion of the deductions from gross income for the taxable year which are allowable under the applicable Revenue Act; or

(2) If the taxpayer so elects by filing his return on such basis, the total net income for the taxable year from the sale of all articles with respect to which each Federal excise tax was imposed (computed by deducting from the gross income from such sales the allocable portion of the deductions from gross income which are allowable under the applicable Revenue Act, but without deduction of the amount of such Federal excise tax which was paid or of the amount of reimbursement to purchasers with respect to such Federal excise tax) shall be divided by the total quantity of such articles sold during the taxable year and the quotient shall be multiplied by the quantity of such articles involved in the sales specified in subsection (a) (1). Such quantities shall be expressed in terms of the unit on the basis of which the Federal excise tax was imposed.

For the purposes of this section the proper apportionment and allocation of deductions with respect to gross income shall be determined under rules and regulations prescribed by the Commissioner with the approval of the Secretary.

income in 1935 from its sales of hog products or had a net loss from these sales, as it claims.

Petitioner introduced the testimony of W. A. Barnett, vice president and secretary of petitioner, who testified in a general way that petitioner lost money on its purchases and sales of hogs and their products in 1935. The substance of his testimony was that petitioner was not advantageously located for the purchase of hogs, that it had to purchase them in competition with the big packers, and that he figured that petitioner, most of the time, lost money on its handling of hogs and hog products and that on this account petitioner endeavored to handle just as few hogs as possible and at the same time satisfy its trade. The witness was unable to give any figures from the books which disclosed the gross sales of hog products that had been processed or submit any figures from which we might arrive at what would be at least a reasonable approximation of what net income or loss, as the case might be, petitioner had in 1935 from its purchases, processing, and sales of hogs. We do not think such evidence as the witness Barnett gave, coupled with the other evidence which is in the record, is sufficient to overcome the presumptive correctness of the Commissioner's determination.

As we have already pointed out, even though petitioner has been unable to show whether it had net income or loss from the sale of hog products in 1935, it still could have escaped the unjust enrichment tax which is now demanded if it could have shown that it absorbed the processing tax in question and did not pass it on to its customers. In making such a showing petitioner is not confined to the formulas, margins, etc., prescribed by the statute. Even when all books and records are lost, there are cases where such a showing can be made. *Sophie Jaski*, 43 B. T. A. 321. But in the instant case petitioner has offered no testimony at all bearing upon the question as to whether it absorbed the processing taxes or passed them on to its customers except the general testimony unsupported by figures that it lost money on handling hogs. Such testimony is insufficient to show that petitioner did not pass the tax on to its customers. *Vennell* v. *United States, supra.*

The petition raises the question of the statute of limitations, but nothing is said of it in the brief. The facts show that petitioner's unjust enrichment tax return was filed December 15, 1936, and the deficiency notice was mailed December 6, 1939. The statute of limitations had not run at the time the deficiency notice was mailed. See secs. 275 (a) and 503 (a), Revenue Act of 1936.

The petition raises the question of the constitutionality of Title III of the Revenue Act of 1936, under which the Commissioner seeks to

impose the tax. No argument is made in the brief in support of this particular assignment of error. We think it is without merit. The constitutionality of the unjust enrichment tax has been upheld by numerous decisions of the courts. See *White Packing Co.* v. *Robertson,* 89 Fed. (2d) 775; *Louisville Provision Co.* v. *Glenn,* 18 Fed. Supp. 423; appeal dismissed, 90 Fed. (2d) 1012; *Union Packing Co.* v. *Rogan,* 17 Fed. Supp. 934.

*Decision will be entered for the respondent.*